UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTOINE TERRANCE SIMMONS,

        Plaintiff,

v.

UNKNOWN SPIESSL et al.,

        Defendants.
_____/

Case No. 2:25-cv-123

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Bakkila. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendants Spiessl, Beck, and Unknown Party. Plaintiff's personal capacity Eighth Amendment claims against Defendants Spiessl, Beck, and Unknown Party remain in the case.

**Discussion**

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues the following AMF personnel in their official and personal capacities: Sergeant Unknown Party,[1] Correctional Officers Unknown Spiessl and Unknown Beck, and Nurse Unknown Bakkila.

Plaintiff alleges that on January 28, 2025, he was involved in a physical confrontation with another prisoner in his housing unit. (*Id.*, PageID.3.) Defendant Spiessl responded to the incident. (*Id.*) According to Plaintiff, Defendant Spiessl intentionally shot Plaintiff in the face with her taser "without issuing any verbal commands" that he could hear. (*Id.*) Plaintiff alleges that at the time Defendant Spiessl responded, he and the other prisoner "were on the ground tussling," and the "entire length of the Plaintiff's body was available to target." (*Id.*) Plaintiff avers that the tasers with which MDOC officers are equipped are "designed with a red beam to hone in on a targeted location of the body." (*Id.*) Plaintiff contends that Defendant Spiessl failed to use the taser properly and instead responded to the incident "'gung ho' ready to sho[o]t." (*Id.*)

Plaintiff alerted Defendant Unknown Party about the taser usage. (*Id.*) According to Plaintiff, Defendant Unknown Party responded, "You should [have] thought about that before you started fighting." (*Id.*) Plaintiff responded, "Come on man[,] I just got shot in my face with a

---

[1] In the portion of his complaint setting out the names and information for all Defendants, Plaintiff refers to Defendant Unknown Party as Sergeant Jane Doe. (Compl., ECF No. 1, PageID.2.) However, in the body of his complaint where he sets out his factual allegations, Plaintiff uses John Doe to refer to Defendant Unknown Party. (*Id.*, PageID.3.) The Court concludes that Plaintiff has used John Doe and Jane Doe to refer to the same individual. For clarity, the Court will refer to this individual as Defendant Unknown Party.

2

taser[.] I can't feel the right side of my face." (*Id.*) According to Plaintiff, Defendant Unknown Party "laughed and walked off." (*Id.*)

Plaintiff was placed in a shower, where Defendant Beck said, "The nurse is not coming over[;] you might as well let me pull that shit out. It look[s] like it hurt." (*Id.*) Plaintiff states that Defendant Beck was referring to the "taser prong lodged in Plaintiff's face inches from his right eye." (*Id.*) Plaintiff responded, "It's too close to my eye[;] I need a nurse man." (*Id.*) Defendant Beck replied, "Dude I'm not about to go against my sergeant. Either you let me take it out or you can sit in the shower with a prong in your face[;] it's up to you. I don't care[;] I go home in a couple [of] hours." (*Id.*, PageID.3–4.) Plaintiff alleges that he felt forced to allow Defendant Beck to remove the prong, even though Defendant Beck was not a nurse and did not have the tool nurses use to remove taser prongs. (*Id.*, PageID.4.)

Afterwards, "the entire right side of his face went numb and numbness eventually progressed into weeks of pain, headaches[,] and nerve damage." (*Id.*) Plaintiff "continued to complain and request medical." (*Id.*) Non-party Officer Keen told Plaintiff, "Nurse Bakkila scheduled you for call-out tomorrow." (*Id.*) The next day, Plaintiff saw non-party Nurse Tatman, who asked Plaintiff why he refused medical assistance the day before because the corrections officers do not know how to remove taser prongs. (*Id.*) Plaintiff told Nurse Tatman that he never refused medical attention. (*Id.*) Plaintiff said that Defendants Beck and Unknown Party had refused to provide him medical attention, and that Defendant Bakkila "was just covering up for them." (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert Eighth Amendment excessive force and denial of medical care claims. Plaintiff seeks $600,000.00 in damages for "pain, suffering[,] and mental distress." (*Id.*, PageID.5.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

4

(1994). As set forth *supra*, the Court has construed Plaintiff's complaint to assert Eighth Amendment excessive force and denial of medical care claims.

### A.     Official Capacity Claims

Plaintiff has sued Defendants in both their official and personal capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Here, Plaintiff seeks only monetary damages. However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff fails to state a claim against Defendants in their official capacities on which the only relief he seeks may be granted.

### B.     Personal Capacity Claims

The Court has construed Plaintiff's complaint to assert Eighth Amendment excessive force and denial of medical care claims.

1.     **Excessive Force**

Plaintiff suggests that Defendant Spiessl used excessive force, in violation of the Eighth Amendment, by deploying her taser and hitting Plaintiff in the face when Plaintiff was involved in an altercation with another inmate.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383

6

(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

As set forth above, Plaintiff alleges that he was involved in a fight with another inmate when Defendant Spiessl responded. (Compl., ECF No. 1, PageID.3.) Plaintiff and the other inmate "were on the ground tussling." (*Id.*) Plaintiff suggests that Defendant Spiessl did not "issu[e] any verbal commands" that he could hear and intentionally shot Plaintiff in the face with her taser. (*Id.*) Plaintiff contends that the "entire length of [his] body was available to target," and that the tasers with which MDOC officers are equipped are "designed with a red beam to hone in on a targeted location of the body." (*Id.*) Plaintiff contends that Defendant Spiessl failed to use the taser properly and instead responded to the incident "'gung ho' ready to sho[o]t." (*Id.*)

With respect to Plaintiff's contention that Defendant Spiessl failed to use the taser properly, an officer's failure to comply with training alone—while perhaps negligent—does not state an Eighth Amendment claim. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986). Moreover, as to Defendant Spiessl's use of the taser, prisons and prison officials have a legitimate interest in

7

maintaining security, order, and in having prisoners obey orders. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992). "Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). A prison official's use of a taser to maintain security and order, such as the use of a taser upon responding to a physical fight between prisoners, does not, on its own, state an Eighth Amendment claim. *See, e.g.*, *Caldwell*, 968 F.2d at 600–02 (collecting cases) (holding that the use of a stun gun on a disruptive prisoner to restore order and discipline was not an Eighth Amendment violation); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (concluding that the use of a stun gun to subdue a noncompliant prisoner did not violate the Eighth Amendment when the prisoner failed to show that the officers used it "maliciously and sadistically to cause harm" (citation omitted)); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with a strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's "interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors" (citation omitted)).

Here, viewed in the light most favorable to Plaintiff, the factual allegations set forth in the complaint show that Defendant Spiessl deployed her taser to break up the fight between Plaintiff and another prisoner. While the use of the taser itself does not state an Eighth Amendment claim, Plaintiff has alleged facts supporting the inference that Defendant Spiessl's response was excessive: she did not give any verbal commands, completely disregarded the red beam taser sight, and intentionally deployed her taser to Plaintiff's face. Although Plaintiff has by no means proven

8

that Defendant Spiessl acted maliciously and sadistically, the Court will not dismiss Plaintiff's personal capacity Eighth Amendment excessive force claim against Defendant Spiessl on initial review.

### 2. Denial of Medical Care

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be

consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cnty., Tennessee*, 93 F.4th 919, 927 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, the Court presumes, for purposes of initial review, that having a taser prong stuck in the face constitutes an objectively serious medical need. Indeed, Plaintiff alleges that "the entire right side of his face went numb and numbness eventually progressed in weeks of pain, headaches[,] and nerve damage." (Compl., ECF No. 1, PageID.4.) The Court, therefore, will

10

consider whether Plaintiff has set forth sufficient facts for the subjective prong with respect to Defendants Unknown Party, Beck, and Bakkila.

### a. Defendants Unknown Party and Beck

Plaintiff contends that after he went to Defendant Unknown Party regarding Defendant Spiessl's use of the taser, he told Defendant Unknown Party that he could not feel the right side of his face. (Compl., ECF No. 1, PageID.3.) Defendant Unknown Party "laughed and walked away." (*Id.*) Plaintiff alleges further that Defendant Beck refused to get a nurse for Plaintiff and instead told Plaintiff that he could either let Defendant Beck remove the prong or sit in the shower "in pain with a prong in [his] face." (*Id.*, PageID.3–4.) Plaintiff felt that he had no choice but to allow Defendant Beck to remove the prong, and Defendant Beck did so without the tool used by nurses for doing so. (*Id.*, PageID.4.) Plaintiff alleges that afterwards, "the entire right side of his face went numb and numbness eventually progressed in weeks of pain, headaches[,] and nerve damage." (*Id.*) Although Plaintiff has not proven deliberate indifference, at this stage of proceedings, the Court must take Plaintiff's allegations in the light most favorable to him. Accordingly, Plaintiff's Eighth Amendment denial of medical care personal capacity claims against Defendants Unknown Party and Beck will not be dismissed on initial review.

### b. Defendant Bakkila

Plaintiff alleges that after he requested medical attention, non-party Officer Keen told him that "Nurse Bakkila scheduled [him] for call-out tomorrow." (*Id.*, PageID.4.) Plaintiff also avers that when non-party Nurse Tatman asked Plaintiff why he had refused medical care, Plaintiff responded that Defendants Unknown Party and Beck had "denied him medical attention and Nurse Bakkila was just covering up for them." (*Id.*)

Plaintiff's allegations are too conclusory for the Court to conclude that he has set forth a plausible Eighth Amendment claim against Defendant Bakkila. First, Plaintiff explicitly alleges

11

that Nurse Bakkila scheduled him for a medical call-out. Scheduling Plaintiff for a medical call-out is the antithesis of deliberate indifference. Moreover, although Plaintiff speculates that Defendant Bakkila "covered up" for Defendants Unknown Party and Beck, Plaintiff fails to set forth any *facts* to support that speculation. He does not allege any facts suggesting that Defendant Bakkila was aware that Plaintiff had requested medical assistance immediately after the taser incident and was denied by Defendants Unknown Party and Beck. At most, Plaintiff has suggested that Nurse Bakkila committed malpractice. Professional negligence, however, is insufficient to support an Eighth Amendment claim for deliberate indifference to a serious medical need. *See Farmer*, 511 U.S. at 835 (discussing that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Accordingly, Plaintiff's personal capacity Eighth Amendment claim against Defendant Bakkila will be dismissed for failure to state a claim upon which relief can be granted.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Defendant Bakkila will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendants Spiessl, Beck, and Unknown Party. Plaintiff's personal capacity Eighth Amendment claims against Defendants Spiessl, Beck, and Unknown Party remain in the case.

An Order consistent with this Opinion will be entered.

Dated:    July 28, 2025                    /s/ Jane M. Beckering
                                           Jane M. Beckering
                                           United States District Judge