UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTOINE TERRANCE SIMMONS,

Plaintiff,

v.

UNKNOWN SPIESSL et al.,

Defendants.

Case No. 2:25-cv-123

Honorable Jane M. Beckering

# OPINION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Plaintiff Antoine Terrance Simmons, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The events described in Plaintiff's complaint occurred at the MDOC's Baraga Correctional Facility (AMF). Plaintiff named four defendants; three remain—Corrections Officers Spiessl, Beck, and Unknown Party. (*See* Op. & Order, ECF Nos. 7, 8.) Only Defendants Spiessl and Beck have been served.

This matter is now before the Court on Defendant Beck's motion for summary judgment. (ECF No. 15.) For the reasons set forth below, the Court will deny the motion.

## I. Factual Background

Plaintiff alleges that on January 28, 2025, he was involved in a physical confrontation with another prisoner in his housing unit. (Compl., ECF No. 1, PageID.3.) Defendant Spiessl responded to the incident. (*Id.*) According to Plaintiff, Defendant Spiessl intentionally shot Plaintiff in the face with her taser "without issuing any verbal commands" that he could hear. (*Id.*) Plaintiff alleges that at the time Defendant Spiessl responded, he and the other prisoner "were on the ground

tussling," and the "entire length of the Plaintiff's body was available to target." (*Id.*) Plaintiff avers that the tasers with which MDOC officers are equipped are "designed with a red beam to hone in on a targeted location of the body." (*Id.*) Plaintiff contends that Defendant Spiessl failed to use the taser properly and instead responded to the incident "'gung ho' ready to sho[o]t." (*Id.*)

Plaintiff alerted Defendant Unknown Party about the taser usage. (*Id.*) According to Plaintiff, Defendant Unknown Party responded, "You should [have] thought about that before you started fighting." (*Id.*) Plaintiff responded, "Come on man[,] I just got shot in my face with a taser[.] I can't feel the right side of my face." (*Id.*) According to Plaintiff, Defendant Unknown Party "laughed and walked off." (*Id.*)

Plaintiff was placed in a shower, where Defendant Beck said, "The nurse is not coming over[;] you might as well let me pull that shit out. It look[s] like it hurt." (*Id.*) Plaintiff states that Defendant Beck was referring to the "taser prong lodged in Plaintiff's face inches from his right eye." (*Id.*) Plaintiff responded, "It's too close to my eye[;] I need a nurse man." (*Id.*) Defendant Beck replied, "Dude I'm not about to go against my sergeant. Either you let me take it out or you can sit in the shower with a prong in your face[;] it's up to you. I don't care[;] I go home in a couple [of] hours." (*Id.*, PageID.3–4.) Plaintiff alleges that he felt forced to allow Defendant Beck to remove the prong, even though Defendant Beck was not a nurse and did not have the tool nurses use to remove taser prongs. (*Id.*, PageID.4.)

Plaintiff seeks an award of damages in the amount of $600,000.00 for pain, suffering, and mental distress.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478–79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff has not responded to Defendant Beck's motion. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct

its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

**III. Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for requiring prisoner's to exhaust grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective September 25, 2023) (ECF No. 16-2). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If the issue is not resolved, then the grievant may file a Step I grievance on the

prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ W, Y, and CC. The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ Y (emphasis in original). Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ CC. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ JJ. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ NN.

Defendants have identified one relevant grievance, AMF-2501-0219-17I ("2501"). (Def's Br., ECF No. 16, PageID.61–62). The grievance stated (in Plaintiff's words):

> At approximately 4:33 p.m. to 4:36 p.m. on 1-28-25 while on Rec. Yard an incident occurred at which time C/O Spiessl shot me in my face with a Taser! C/O Black removed the projectile from my face w/out health care being present! She shot me in the [face] intentionally. My eye an[d] jaw was jumping. I can <u>not</u> feel the right side of my face. I believe that I have nerve damage. I request immediate investigation and camera records. I believe that this is a violation of safety procedures.

(Grievance 2501, ECF No. 16-3, PageID.90.) Plaintiff mentioned Defendant Beck in describing his attempt to resolve the issue before writing the grievance:

> Asked the Sgt. for medical. They told me I'll be ok. I shouldn't been fighting. At no time did they request medical so I allow Officer Beck to remove it.

(*Id.*) It certainly appears that Plaintiff was referring to C/O Beck when he wrote C/O Black.

The Grievance 2501 response noted that the respondent had interviewed Officer Spiessl. (*Id.*, PageID.91.) Spiessl reported that she intended to discharge the taser towards Plaintiff's lower torso and legs. (*Id.*) The respondent noted that Nurse Bakkila had documented on the bottom of the Prisoner Injury Report form that "Inmate refused Healthcare assessment. As prisoner was being escorted back to his cell the prisoner was asked if he needed a healthcare assessment? prisoner ignored healthcare and walked by." (*Id.*) The respondent found no evidence to support Plaintiff's claim that Officer Spiessl had intentionally targeted Plaintiff's face or that Plaintiff was refused medical treatment. (*Id.*)

Plaintiff appealed the Step I response. (*Id.*, PageID.87.) Plaintiff challenged the respondent's conclusion because "if [Officer Spiessl] was intentionally aiming for my torso or legs the injury to my face clearly would not have happened." (*Id.*) The Step II respondent concluded that the Step I response was appropriate and denied the appeal. (*Id.*, PageID.89.) Plaintiff appealed the Step II response as well, contending that the respondent was lying to cover up the use of excessive force. (*Id.*, PageID.87.) The Step III appeal was denied on May 20, 2025. (*Id.*, PageID.86.)

"[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[;]" "the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 549 U.S. at 219 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Under PD 03.02.130, a prison official is not alerted to the "problem" being grieved unless that problem is identified by the prisoner listing the "[d]ates, times, places and names of all those involved in the issue being grieved."

Here, the problem raised in the grievance is that Defendant Spiessl shot Plaintiff in the face and that Plaintiff was not provided medical care. The Court concludes that Plaintiff's description

of the event in the grievance directly implicated Officer Beck when he states that "they" told Plaintiff he would be "ok," "they" would not request medical, and Beck removed the "projectile from [Plaintiff's] face." (Grievance 2501, ECF No. 16-3, PageID.90.) Officer Beck's removal of the projectile was part and parcel of not providing medical care for Plaintiff, an issue addressed by the respondent. In short, Plaintiff's grievance satisfied the exhaustion requirement because it "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525. Accordingly, Defendant Beck has failed to demonstrate that he is entitled to judgment as a matter of law on his "failure to exhaust" defense.

**Conclusion**

The Court will enter an Order denying Defendant Beck's motion for summary judgment.

Dated: September 3, 2026

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge